**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VICTOR A. MENOR, *Plaintiff* | : : : : | CIVIL ACTION NO. |
| vs. | : : | JURY TRIAL REQUESTED |
| TEXIAN GROUP, INC., *Defendant* | : : : | NOVEMBER 1, 2017 |

**COMPLAINT**

### I. INTRODUCTION

1. This is an action to redress wrongful discharge in violation of Title VII of the Civil Rights Act of 1964, *et seq.,* 42 U.S.C. § 1981, intentional infliction of emotional distress, retaliation in violation of Conn. Gen. Stat. §31-51q, and common law wrongful discharge in violation of public policy.

### II. JURISDICTION

2. Jurisdiction in conferred on this Court pursuant to federal question jurisdiction, as Plaintiff's claims arise, *inter alia*, under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, *et seq.* and 42 U.S.C. § 1981.

3. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper within this District because a substantial part of the events giving rise to this action occurred within this District.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff timely filed an administrative complaint with the Equal Employment Opportunities Commission on or about February 17, 2017, and thereafter

received a release of jurisdiction and Notice of Right to Sue letter on or about September 12, 2017, a copy of which is appended hereto as EXHIBIT A.  This action is brought within 90 days of receipt of said notice.  As such, the Plaintiff has exhausted his administrative remedies and this action is timely.

## IV.   PARTIES

5. The Plaintiff, Victor A. Menor ("Plaintiff"), was at all times mentioned herein a resident of the Town of Norwich, State of Connecticut.

6. Texian Group, Inc. ("Defendant" or "Defendant Company") is a foreign corporation with a principal business address of P.O. Box 447, Seabrook, Texas, 77586.  Defendant Company is engaged in the business of performing inspection services related to the construction and maintenance of industrial oil and gas pipelines and appurtenances, and performed such work on numerous projects throughout the State of Connecticut at all times relevant to this Complaint.

## V.   FACTS

7. Plaintiff is of Philippino and Italian ethnicity, and has a non-white complexion.

8. Defendant Company, through its agents, managers, and employees, discriminated against Plaintiff in the terms and conditions of his employment, subjected him to a hostile work environment, and ultimately caused the working conditions to become so hostile that Plaintiff was left with no choice but to resign, all on account of his ethnicity and my skin color.

9. Plaintiff first became employed with Defendant on or about October 19, 2015 as a lead coating inspector.  This role required Plaintiff to, *inter alia*, inspect

industrial coatings applied to oil and gas pipelines being built or maintained in order to ensure that the work being performed on such pipelines was being done to specification, and to ensure that they would be able to function safely.

10. On or about October 19, 2015, Plaintiff's very first day working for Defendant, he reported to work at Defendant's "Franklin Yard" project, located in Franklin, Connecticut. Upon arriving at the project, Plaitniff introduced himself to Defendant's Assistant Supervisor for the Franklin Yard Project, C.L. Williams ("Williams"), who is white.

11. After introducing himself as Defendant's new coatings inspector, Williams cautioned Plaintiff to "Be aware" and further conveyed that by virtue of being on the site without his prior knowledge, Plaintiff was "trespassing." Williams then, referring to Plaintiff, asked other workers at the site if "anyone [knew] who this fucking guy is?" Williams then demanded to see Plaintiff's credentials. In response, Plaintiff showed Williams his certifications.

12. After confirming that Plaintiff was indeed Defendant's new inspector for the project, approximately two days after he first reported to work at Defendant's Franklin Yard project, Williams, while in Plaintiff's presence, turned to a fellow worker, David Bailey, and stated, in words or substance, "I don't know why they're hiring these kind of people now. Now this job's gonna go to shit for sure." Upon information and belief, Williams was referring to Plaintiff's skin color and appearance by referring to "these kind of people."

13. Thereafter, on a daily basis, Plaintiff was consistently subjected to derisive, prejudicial, and racist comments directed at his skin color and his perceived ethnicity.

14. By way of example, on a separate project located in Burrillville, Rhode Island, Defendant's supervisor, referred to Plaintiff as "the nigger inspector."

15. Said supervisor would also routinely refer to Plaintiff as being Mexican, simply on account of Plaintiff being non-white. For example, on or about January 13, 2016, Plaintiff had requested that he be allowed to come to work later in the morning on that date, on account of the fact that it was his wife's birthday, and he had conveyed that he would like to take her to breakfast.  When Plaintiff later arrived at the worksite, the supervisor asked Plaintiff whether he had just bought his wife tacos, insinuating that Plaintiff was Mexican.

16. The supervisor also deliberately saw to it that Plaintiff was not allowed to have an office or workspace located at the Burrillville project site, despite the fact that his similarly-situated white co-workers all had office spaces in which to work.

17. The defendant supervisor would also routinely refer to Plaintiff as "spic" as opposed "Vic".

18. Whenever Plaintiff would do his job, which oftentimes included instructing contractors to re-perform work to the proper specifications, Defendant supervisor would make comments such as "This fucking nigger is holding up the job."

19. On or about January 26, 2016, Plaintiff was called upon to inspect a significant portion of pipeline which had already had its industrial coating applied to it. Upon inspection, Plaintiff noticed that a significant portion of the high-pressure gas

pipeline was seriously out of specification, which ultimately meant that the pipeline was not safe and could be subject to catastrophic failure, and Plaintiff therefore instructed the coating crew that a large segment of the work needed to be sandblasted and re-coated to the proper specification.

20. In response, Plaintiff's supervisor became irate, and began spewing racist, vitriolic epithets at Plaintiff, all directed at his skin color and ethnicity. For example, the supervisor asked Plaintiff, in words or substance, "Do you even know what the fuck you're doing? Where did you get your certification, over the border?"

21. The following day, Plaintiff relayed my conclusions regarding the fact that the work on the pipeline needed to be re-done during the course of a meeting with all the relevant parties. Following the meeting, and after Plaintiff explained precisely why the work needed to be re-done on the pipeline and cited the applicable specifications, the same supervisor engaged in another diatribe directed at Plaintiff's skin color and ethnicity. Specifically, he inquired as to whether Plaintiff's specifications book was "even written in English." He again stated, "This fucking nigger is holding up the job." He further inquired, "Why is this fucking nigger here?"

22. The supervisor, during the course of the preceding diatribe, and on other occasions, also referred to Plaintiff as a Mexican, a "spic", a "sand nigger", and a "border jumper."

23. The supervisor, on numerous occasions and in an effort to make sure the project advanced toward completion in a timely fashion, would also attempt to prevent Plaintiff from doing my job as an inspector. On one particular occasion, he instructed

Plaintiff, in words or substance, to "stop picking shit apart" and to "turn and look the other way."

24. The racist commentary to which Plaintiff was subjected continued on a virtually daily basis, until on or about August 24, 2016, when Plaintiff was unable to endure both the bigoted harassment and discrimination or Defendant's supervisors attempts to undermine his work in ensuring that the work being done on dangerous, high-pressure oil and gas pipelines was being done to specification.  On or about that date, Defendant Company constructively discharged Plaintiff's employment.

25. Defendant was aware of the aforesaid unlawful discriminatory and unethical behavior, and allowed it to persist.

**COUNT ONE:    RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

1. Paragraphs 1 through 25 above are hereby reallaged as Paragraphs 1 through 25 of this Count One as if fully set out herein.

26. The foregoing conduct of the Defendant, acting through its agents, servants and/employees, constitutes Race Discrimination in violation of 42 U.S.C § 1981 in that the Defendant intentionally discriminated against the Plaintiff.

27. Plaintiff's race was a motivating factor in Defendant's unlawful and unfair treatment of the Plaintiff, resulting in the constructive discharge of his employment.

28. As a result of his discriminatory discharge, Plaintiff has suffered, and will continue to suffer, lost earnings and emotional distress, and has incurred legal fees and costs in order to secure the rights to which he is entitled.

**COUNT TWO:    RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE
                CIVIL RIGHTS ACT OF 1964**

1. Paragraphs 1 through 25 above are hereby reallaged as Paragraphs 1 through 25 of this Count Two as if fully set out herein.

26. The foregoing conduct of the Defendant Company constitutes Race Discrimination in violation of Title VII of the Civil Rights Act of 1964 and Conn. Gen. Stat. § 46(a)-60(a)(1) in that the Defendant discriminated against the Plaintiff.

27. The Plaintiff's race was a motivating factor in Defendant's unlawful and unfair treatment of the Plaintiff, as well as the Defendant's constructive discharge of Plaintiff.

28. As a result of his discriminatory discharge, Plaintiff has suffered, and will continue to suffer, lost earnings and emotional distress, and has incurred legal fees and costs in order to obtain a right to which he is entitled.

**COUNT THREE:    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1. Paragraphs 1 through 25 above are hereby reallaged as Paragraphs 1 through 25 of this Count Three as if fully set out herein.

26. The Defendant's aforementioned actions, through its agents, servants or employees, were extreme and outrageous.

27. The foregoing actions of the Defendant's, through its agents, servants and/employees, were intended to inflict emotional distress upon the Plaintiff and the Defendant knew, or in the exercise of reasonable care, should have known that severe emotional distress which could result in bodily injury was the likely result of the aforementioned conduct.

28.     As a result of his discriminatory discharge, Plaintiff has suffered, and will continue to suffer, lost earnings and emotional distress, and has incurred legal fees and costs in order to obtain a right to which he is entitled.

**COUNT FOUR:     WRONGFUL DISCHARGE IN VIOLATION OF CONN. GEN. STAT. § 31-51q**

1.      Paragraphs 1 through 25 above are hereby reallaged as Paragraphs 1 through 25 of this Count Four as if fully set out herein.

26.     Plaintiff engaged in protected activity in speaking out as a citizen on matters of public concern when he demanded that work being done on the potentially hazardous high-pressure gas pipeline be done in accordance to specifications in response to Defendant's insistence that he "look the other way."

27.     Defendant retaliated against Plaintiff on account of his having engaged in such protected activity, subjecting him to increased hostility and vitriol directed as his race and ethnicity, and ultimately creating a working environment so hostile that he was left with no choice but to resign.

28.     As a result of his unlawful discharge, Plaintiff has suffered, and will continue to suffer, lost earnings and emotional distress, and has incurred legal fees and costs in order to obtain a right to which he is entitled.

**COUNT FIVE:     COMMON LAW WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

1.      Paragraphs 1 through 25 above are hereby reallaged as Paragraphs 1 through 25 of this Count Five as if fully set out herein.

26.     Defendant's actions, in subjecting Plaintiff to a working environment so hostile that he was left with no choice but to resign, thereby constructively discharging

him, all in retaliation for him having demanded that work being done on the aforesaid pipeline projects in accordance with applicable safety specifications, is in violation of the public policy enumerated in the Pipeline Safety Act of 2016, 49 U.S.C. § 60102 *et. seq.*

27. As a result of his unlawful discharge, Plaintiff has suffered, and will continue to suffer, lost earnings and emotional distress, and has incurred legal fees and costs in order to obtain a right to which he is entitled.

**WHEREFORE**, Plaintiff requests that the Court assume jurisdiction over this matter and provide him with the following relief:

1. Monetary damages;

2. reinstatement or front pay;

3. punitive damages;

4. attorneys' fees and costs; and

5. such other relief as the Court deems just and proper.

By:_____
Matthew D. Paradisi (ct29915)
Cicchiello & Cicchiello, LLP
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Juris No.: 419987
Email: mparadisi@cicchielloesq.com

# EXHIBIT A

EEOC Form 161 (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Victor A. Menor<br>178 Plain Hill Road<br>Norwich, CT 06360 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2017-00728 | Amon L. Kinsey, Jr.,<br>Intake Supervisor | (617) 565-3189 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒   Other *(briefly state)*     **Charging Party is pursuing claim in another forum.**

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Kenneth An*

**SEP 1 2 2017**

Enclosures(s)       Feng K. An,<br>Area Office Director       *(Date Mailed)*

cc:
    TEXIAN GROUP, INC.<br>
    1305 Anders Avenue<br>
    Seabrook, TX 77586

    Matthew D. Paradisi, Esq.<br>
    CICCHIELLO & CICCHIELLO LLP<br>
    364 Franklin Avenue<br>
    Hartford, CT 06114